FTB:EWS/RWN
F. #2024R00065

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
\* MARCH 28, 2025 \*
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

STEPHAN DEGROAT and
NIDAL ISA,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____25-CR-113_____
(T. 18, U.S.C., §§ 371, 924(d)(1),
981(a)(1)(C), 1343, 1349, 2 and 3551 et
seq.; T. 21, U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

Judge Kiyo A Matsumoto
Magistrate Judge Laura K. Ehskenazi

THE GRAND JURY CHARGES:

At all times relevant to this Indictment, unless otherwise indicated:

I.     The Defendants and Relevant Entities

        1.    Company #1, an entity the identity of which is known to the Grand Jury, provided comprehensive services to support employment opportunities for persons with emotional, developmental, or physical disabilities and to those who are economically disadvantaged. It was organized under the Not-for-Profit Corporation Law of the state of New York and had been granted exemption from federal income tax pursuant to Section 501(c)(3) of the Internal Revenue Code. Company #1 received funding from various sources, including from the federal government, New York State and New York City.

        2.    The defendant STEPHAN DEGROAT was employed by Company #1 between approximately 2019 and 2023. He served in multiple roles at Company #1, including as Director of Facilities and Operations, where he was responsible for helping to select outside contractors to perform work on Company #1's behalf.

3.      The defendant NIDAL ISA operated Nisa Enterprises LLC (d/b/a Top Contractors), a home improvement and construction company located in Katonah, New York. Top Contractors held several construction-related contracts with Company #1. Between approximately September 2020 and December 2023, Company #1 paid Top Contractors more than $2.3 million related to work performed at various Company #1 sites.

II.     Relevant Policies and Contractual Provisions

4.      Company #1's employee handbook provided that its employees owed a duty of loyalty to the company. It also prohibited employees from, among other things, falsifying documents; influencing organization decisions for their own profit or advantage; and accepting bribes, kickbacks, or things of value above a nominal amount of money from Company #1's vendors, suppliers or participants.

5.      In or about November 2021, the New York City Human Resources Administration ("HRA") contracted with Company #1 to operate a workforce development site for low-income residents living in buildings managed by the New York City Housing Authority. As part of that agreement, Company #1 agreed to certain competitive bidding obligations, including that it would "solicit and document at least (3) written estimates for any payment made or obligation undertaken in connection with this Agreement for any purchase of goods, supplies or services (including but not limited to consulting services) for amounts in excess of $25,000[.]"

6.      Company #1's employee handbook also included provisions requiring employees to solicit three or more quotes, bids or proposals for purchases greater than $3,000 in connection with procurement contracts, expenditures and disbursements.

III. <u>The Criminal Scheme</u>

7. In or about and between June 2021 and August 2023, the defendant NIDAL ISA paid approximately $35,000 in bribes and kickbacks to the defendant STEPHAN DEGROAT in exchange for DEGROAT's steering Company #1 business to Top Contractors.

8. The majority of the bribes and kickbacks paid by the defendant NIDAL ISA to the defendant STEPHAN DEGROAT were made via Zelle, an electronic payment platform, and occurred on the same day or a few days after Company #1 remitted payment to Top Contractors. For example, on or about September 23, 2021, Company #1 paid Top Contractors $12,685.85 via check. DEGROAT received two Zelle payments from Top Contractors totaling $8,000 the following day and an additional Zelle payment of $747 approximately three days later. Likewise, on or about January 19, 2023, Company #1 paid Top Contractors $13,233.75 via check. The same day, DEGROAT received a Zelle payment from Top Contractors totaling $5,000.

9. Some of the bribes and kickbacks paid by the defendant NIDAL ISA to the defendant STEPHAN DEGROAT took the form of in-kind benefits. For instance, on or about December 9, 2021, Company #1 paid Top Contractors $51,499.98. That same day, an order was placed for a washing machine, dryer, and related accessories, with a total price of $5,369.49, which was paid for by ISA and shipped to DEGROAT's residence. Likewise, on or about June 29, 2023, Company #1 paid Top Contractors $17,128.14. The following week, the defendant NIDAL ISA purchased a Samsung 85-inch television for over $1,000 and arranged for it to be shipped to DEGROAT's residence. Two days later, ISA texted DEGROAT, "Did u get the new TV? I think it arrives tomorrow[.]" DEGROAT responded, "No. They called me and said going to be late. They took off $95[.] You should see a credit[.]"

10. In addition, the defendants STEPHAN DEGROAT and NIDAL ISA conspired to obtain money and property from Company #1 by means of materially false and fraudulent representations. At times during the scheme, DEGROAT revealed confidential information about competing bids received by Company #1 and directed ISA to increase the amount of Top Contractors' bids or invoices for services rendered. DEGROAT thus directed ISA to charge more money to Company #1 for the benefit of Top Contractors—and caused Company #1 to pay inflated sums to Top Contractors.

11. For instance, on or about July 14, 2021, the defendant NIDAL ISA texted the defendant STEPHAN DEGROAT, "I[']ll bid 40[.]" DEGROAT responded, "No[.] You'll bid 49[,]" to which ISA wrote, "But u said the other guy wanted 42[.]" DEGROAT answered, "I won't use his[.]"

12. On or about June 27, 2022, the defendant STEPHAN DEGROAT texted the defendant NIDAL ISA "Raise 1391[.] $2929.48," adding, "Making you extra[.]" Company #1 then received an invoice from Top Contractors under invoice number 1391 for $2,929.48. The same day, DEGROAT received a Zelle payment from Top Contractors of $5,000. Two days later, on or about June 29, 2022, DEGROAT received an additional Zelle payment from Top Contractors of $500. ISA then sent a text message to DEGROAT explaining, "I've exceeded my 30 day limit which is $60,000 for Zelle. . . . . I started at 3000 then went to 2000 then tried 1000 and finally it let me do 500! If you really really needed it today then I could possibly get some cash for you but we will have to meet up[.]" DEGROAT responded, "It can wait. No problem[.]" On or about July 3, 2022, ISA sent DEGROAT the remaining funds in the form of a Zelle payment of $2,500.

13.     On or about November 17, 2022, the defendant STEPHAN DEGROAT texted the defendant NIDAL ISA summarizing their arrangement as follows: "So my job is to get much higher quotes to allow you to score! Still. Do a quote on Wappingers[.] Send to my personal only[.]" ISA responded, "Lol. Okay[.]"

14.     At various times during the defendants' criminal scheme, the defendant STEPHAN DEGROAT demonstrated his efforts to increase the funds obtained by Top Contractors despite the fact that he was employed by Company #1. For instance, on or about March 11, 2022, the defendant NIDAL ISA texted DEGROAT writing in part, "Got u a bottle of JW Blue[.]" Hours later, DEGROAT wrote, "I'm doing budget today. I've gotta turn in on Monday 3pm[.] We need to go through hvac[.] Per location[.] This is the prelude to your upcoming year[.] Remember[,] I work for Top." The following day, DEGROAT told ISA that he would "see that you get both of those," referring to two Company #1 projects, adding, "Dude. Big $ here[.] We can squeeze every penny[.]" Weeks later, on or about April 6, 2022, DEGROAT texted ISA, "I told you. I work for Top[.]" ISA responded, "Lol[.]"

15.     As part of the scheme to defraud, the defendants STEPHAN DEGROAT and NIDAL ISA devised a scheme to circumvent Company #1's competitive bidding requirements by causing fictitious bids, purportedly submitted from other contractors, to be submitted to Company #1. The defendants submitted the fictitious bids to make it appear that the process for bidding on Company #1's projects was legitimate and complied with Company #1's competitive bidding requirements when, in fact, it had not.

16.     For example, on or about September 24, 2021, the defendant STEPHEN DEGROAT directed the defendant NIDAL ISA to submit a quote from Top Contractors for $5,200 in connection with a Company #1 project. ISA asked, "Did you mean one from Top and

one from [Bidder #1, an entity the identity of which is known to the Grand Jury]? DEGROAT responded, "Can you[?]" When ISA indicated that he would submit a bid purportedly from Bidder #1 for $5,200, DEGROAT responded, "Go 5400."

17. On or about January 14, 2023, the defendant STEPHAN DEGROAT directed the defendant NIDAL ISA to submit a bid for a Company #1 project. During the exchange, DEGROAT indicated that he would disregard a competitor's bid and added, "I'm going to give him something else to keep him quiet." He then instructed ISA to submit a bid for approximately $177,000. The following day, DEGROAT texted ISA that he received Top Contractor's bid, "pushed it up a bit more[,]" and would need ISA to submit a fictitious bid from Bidder #2, an entity the identity of which is known to the Grand Jury. DEGROAT added, "I can write it if you please." Approximately two days later, DEGROAT emailed himself a fictitious bid purporting to be from Bidder #2 for $185,000.

18. The defendants' use of fictitious bids caused Company #1 unwittingly to seek reimbursement from HRA for work awarded to Top Contractors in the absence of genuine competitive bids, which money was in fact paid by HRA.

COUNT ONE
(Wire Fraud Conspiracy)

19. The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

20. In or about and between February 2021 and August 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEPHAN DEGROAT and NIDAL ISA, together with others, did knowingly and intentionally conspire:

   (a) to devise a scheme and artifice to deprive Company #1 of its intangible right to the honest services of DEGROAT through bribery and kickbacks, to wit: one or more payments from ISA to DEGROAT, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Sections 1343 and 1346; and

   (b) to devise a scheme and artifice to defraud Company #1 and to obtain money and property from Company #1 by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce one or more writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

  (Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Wire Fraud)

21. The allegations set forth in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

22. In or about and between May 2022 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEPHAN DEGROAT and NIDAL ISA, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HRA and to obtain money and property from HRA by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executive such scheme and artifice did transmit and cause to be

transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: Zelle transfers.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT THREE
(Conspiracy to Violate the Travel Act)

23. The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

24. In or about and between February 2021 and August 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEPHAN DEGROAT and NIDAL ISA, together with others, did knowingly and willfully conspire to use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on, of one or more unlawful activities, to wit: Commercial Bribing in the First Degree, in violation of New York Penal Law Sections 180.03 and 20.00, and Commercial Bribe Receiving in the First Degree, in violation of New York Penal Law Sections 180.08 and 20.00, and thereafter to perform and attempt to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3).

25. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants STEPHAN DEGROAT and NIDAL

ISA, together with others, did commit and cause the commission of, among others, the following overt acts:

## OVERT ACTS

(a) On or about June 26, 2021, in response to a text message from ISA attaching a link confirming a purchase from a home improvement store, DEGROAT sent a text message to ISA, saying "Yes. I love you. Lol[.]  Anything you spend will be paid for[.]  3 fold[.]"

(b) On or about September 24, 2021, ISA sent an email to DEGROAT's Company #1 email address containing an estimate purporting to be from Bidder #1 (the "Estimate").

(c) On or about September 24, 2021, ISA sent a text message to DEGROAT stating, "Steve. Please erase email that I just sent to u ASAP!!! I will resend to [personal email] addy instead!!!"

(d) On or about September 24, 2021, ISA sent an email to DEGROAT's personal email address attaching the Estimate.

(e) On or about November 11, 2021, ISA directed DEGROAT to "[u]se my card" to make a purchase from a home improvement store and to list Top Contractors' tax number, explaining that if there were ever any scrutiny of the purchase, "I could always say that it was for [Company #1] or that one of my workers purchased it And assumed it was for [Company #1] like everything else that we purchase these days[.]"

(f) On or about November 16, 2021, ISA paid for a 65-inch Samsung 4K Smart TV, with a price of $1,699.99, which was shipped to DEGROAT's residence.

  (g) On or about December 9, 2021, ISA paid for a washing machine, dryer, and related accessories, with a total price of $5,369.49, which were shipped to DEGROAT's residence.

  (h) On or about February 10, 2022, ISA bought DEGROAT a $1,500 gift card.

  (i) On or about September 16, 2022, DEGROAT sent ISA text messages instructing ISA to add $2,000 to each of certain Top Contractors' invoices and assuring him that DEGROAT would sign them. Immediately thereafter, DEGROAT texted ISA, "Probably should delete text conversations[.] You never know[.]"

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE AND TWO

  26. The United States hereby gives notice to the defendants that, upon their conviction of either of the offenses charged in Counts One and Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

  27. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

  (a) cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third party;

  (c) has been placed beyond the jurisdiction of the court;

  (d) has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

    (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT THREE

    28.  The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Three, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offense to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offense; and (b) Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any violation of any other criminal law of the United States.

    29.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

12

        (e)       has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

        (Title 18, United States Code, Sections 924(d)(1) and 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

/s/
_____
FOREPERSON

*By David Pitluck, Assistant U.S. Attorney*
_____
JOHN J. DURHAM
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK